The next case this morning is 521-0192, People v. Jason Oskins. Arguing for the defendant appellant is Unsan Nam. Arguing for the state appellee is Jennifer Camden. Each side will have 10 minutes for the argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. You ready to proceed? Yes, your honors. The court will now first hear from the appellant. Please state your name for the record, counsel, and you may proceed. Yes, your honor. May it please the court, counsel, assistant appellant defender Unsan Nam, on behalf of Jason Oskins. In January 2021, this court vacated Jason's original sentence and remanded his case to the trial court for resentencing. There are two arguments on appeal. Both involve issues that arose on remand at the resentencing hearing. For the first issue, Jason asked this court to remand or reduce his six-year sentence because the trial court relied on an aggravating factor inherent in the offense of first-degree murder. And for the second issue, Jason asked this court to reduce or remand for resentencing because the trial court improperly rejected the constitutional and statutory significance of his use of the- Before you go further, I want to ask you about something. Yes, your honor. Ms. Camden, in her brief, says his outdate is June 6, 2025. Do you agree with that outdate? Yes, your honor. I think in the brief, it was initially- in the state's brief, it was initially October, but I do believe that the time has shortened. So it should be June 2025, the last time I checked. Yes, your honor. And I'll- you know, Ms. Camden can respond to that. I looked him up in the system and not sure that was the right date- the date that I got. But I'm sure if that's the date that you're representing, I'm sure it's the right date. Yes, so his time has been shortening. So it might be slightly different than when the state filed its brief, because the- for good sentence credit, his time is shortening. Yeah, he can do things in the system that shorten that. Is that correct? That's correct, your honor. Okay, you may proceed. Thank you. So, again, for the second issue, we're also asking to reduce remand because the trial court improperly rejected the constitutional and statutory significance of his youth at the time of the offense. So turning to the first argument, at resentencing, the trial court relied on an aggravating factor that was inherent in the crime of first-degree murder, specifically that Jason's conduct caused or threatened serious harm or resulted in great bodily harm. And when a trial court improperly considers a factor in aggravation, the case must be remanded unless it appears from the record that the weight placed on this improper factor was so insignificant that it did not lead to a greater sentence. But that's not the case here, where this was the first of few factors that the trial court discussed. Further, not only did the court merely mention it in its oral ruling, it marked the great bodily harm finding three times, or three separate times, in the written judgment, the amended written judgment, and the second amended written judgment. So it's in all three forms that the court marked. Thus, although the court has broad discretion when imposing a sentence, it still may not consider a factor implicit in the offense as an aggravating factor in sentencing a defendant. That means that this single factor cannot be used both as an element of the offense and a basis for imposing a harsher sentence, because the legislature has already considered that when setting the range of penalties. And here, the aggravating factor that Jason threatened or caused serious harm, or that his conduct resulted in great bodily harm to the decedent, his grandmother, was a factor inherent in the offense of first degree murder. Death is the most severe harm that one can cause, and it's necessarily a part of first degree murder, along with causing or threatening serious harm or conduct resulting in great bodily harm. But by... A murder that's particularly gruesome and heinous and causes a lot of pain, it's your position that that can't be considered as aggravating? So, I believe Your Honor is talking about the degree or the gravity of conduct or the nature of the circumstances, which is appropriate in certain cases, but it's not appropriate... To wrangle her and put a bag over her head? Yes, Your Honor. And again, it may be appropriate in certain cases, but those cases are distinguishable from the instant case where the trial court did not specify... And this is his own grandmother. Yes, Your Honor. Yes, Your Honor. In this case, correct me if I'm wrong, but the court had the option of enhancing the sentence based on those heinous behavior and declined to do so, is that correct? So, the court stated that this could have been extended term, but did not specifically state that it was finding an extended term sentence. Based on the heinous part of it? That's right. The heinous and brutal part, the court didn't find. And the fact of the grandmother being over the age of 60, the court stated that the initial trial court discussed it, stated that the grandmother was over 60, but there wasn't a separate jury finding or anything about this matter. And in the particular remand, the court just mentioned it, stating that there was a possible extended term sentence, but did not specifically find the extended term sentence eligibility. Okay. Thank you. Again, Your Honors are correct. The degree is something that the court can consider. But the problem here is that the court, in the court's oral ruling, it talked about the $11,000 that the court didn't believe Jason as a minor could have that much money or talked about the pills or the empty pill bottles. But the court didn't specifically talk about the nature or the circumstances of this offense and just stated that it was finding his conduct caused or threatened serious harm. And again, it marked all three times that the conduct resulted in great bodily harm. But that by itself is a part of first degree murder. It's a factor that's inherent, an aggravating factor that's inherent in the offense of murder. And again, this is different than some of the cases where, for example, DUI cases or where a defendant shoots into an apartment building complex where there's threat to the general public, threat to others. Here, it's just Jason and his grandmother. And without the specific findings, we just have the court finding this inherent factor. And that's not allowed because it is a part of first degree murder. Again, Jason did cause a death. Jason did cause or threaten harm, cause great bodily harm. But these are all a part of first degree murder. What was the range that the court had the sentence? What was the sentencing range? I believe it was 20, just 20 to 60.  So in other words, the court had, as an option, had the ability to do an extended term, either because the victim was over 60 or because of the heinous and brutal nature of the crime, chose not to do so. And went ahead and sentenced them to the maximum allowed under the first degree murder. Without the specific, yes, without the specific extended term finding. And 60 years is within the sentencing range, isn't it? That's correct, Your Honor. Unless there's any other questions, I will move on to the second argument. We're running out of time, but I'm going to go in reverse order. So I'm going to talk about the deterrence factor first. The trial court improperly relied on deterrence to aggravate Jason's sentence, even though he was a minor at the time of the offense. Both parties recognized that the United States Supreme Court determined that minors, unlike adults, are less susceptible to deterrence. And as in People v. Hill, which is cited in our reply brief, the trial court, the trial courts in both cases, in Hill's case and Jason's case, found that the sentences were necessary in part to deter others from committing the same crime. Normally, deterrence is proper, a proper sentencing consideration. But as in Hill, deterrence should not have been considered here because Jason's actions were due to his youth and not considered adult decision making. I see my time is up. I will come back in rebuttal unless there's any questions. You'll have opportunity in rebuttal to continue. Thank you. Any questions, Justice White? No questions. Justice Barberis? Not at this time, thank you. We'll now hear from the state. Ms. Camden, please state your name for the record. Thank you, Your Honor. May it please the court, counsel, Jennifer Camden on behalf of the people. First, let me start by saying that the state can file an updated DOC form to correct the defendant's outdate as represented in the appendix to the brief. I agree with opposing counsel that since the filing of the state's brief, that time appears to have been shortened. Moving on to... Do you know what it is now? It was a date in June 2025. I don't have the date in front of me past the month, June. Okay. Right now, we're looking at less than one year and ten months. Correct, Your Honor. How old is he now? I believe he's around 46. I believe I had calculated that he'd be 46 or 47 when released, and that would have been three months after, so in October. So I'm... I can recalculate that. That's close enough. Thank you. You may proceed. Thank you, Your Honor. On issue one, plain error review applies, and there are two reasons why the defendant has not shown that the trial court clearly and obviously relied on the fact of the victim's death rather than permissibly relying on factors such as the severity of her injuries or other such factors in finding an aggravation that the defendant's conduct caused or threatened serious harm. First, because the court did not say that it found the factor based on the fact of the victim's death, the defendant's not met his plain error burden of overcoming the applicable presumption that the trial court relied on a proper analysis and found the factor based on a proper analysis. Now, the defendant in the reply brief at page six claims that the court mentioned, quote, his conduct of killing his grandmother, but the court stated only that it had considered factors including that, quote, the defendant's conduct caused or threatened serious harm, which it did. That's at page 1642. The court didn't indicate that the conduct on its mind was killing his grandmother rather than on the nature and extent of the injuries he inflicted in the course of doing so, and this court should not presume error from a silent record. The applicable presumption should apply. The second reason that the defendant is not shown plain error is based on this court's prior opinion in the Brown case from 2019. In that case, this court stated that in evaluating the basis on which the trial court found the factor, this court may consider the record as a whole, including in this case at resentencing, the state urged the court to find the aggravating factor based on proper circumstances, including the nature, degree, extent, and severity of the injuries that the defendant inflicted on the victim, the manner in which she died and the circumstances of the events. That's the analysis that this court used in the Brown case. Specifically in this case, as set forth in the record at pages 1619 through 1621, the state detailed each injury to the victim, added that she was probably alive when each was inflicted, and noted that, quote, these injuries and the harm they caused were consistent with the defendant's own statements about the murder weapons of a knife, a pan, and a bag. So that argument shows that the state was focused on the degree of harm and the injuries they caused, which were extensive. And as in the Brown case, this court should refuse to presume that the trial court found the factor based on the fact of the victim's death, given that relevant context. Now, the defendant in the reply at page 6 posits that the harm caused in first degree murder is the same in every case. But of course, under the principles set out in doubting, a court may appropriately find the factor based on facts other than the victim's death. And the state's brief at page 21 cites five such cases. Now, the defendant notes that a couple of those cases involved the trial court finding the factor based on the separate permissible factor of the defendant's acts threatening others. But the state also cited a couple of murder cases where the factor was found based only on the nature and circumstances of the victim's death or the degree of harm to the victim. And that's the Shanklin case and the Brewer case. The defendant mentions a box on the form, the sentencing form that the court marked that the defendant's conduct resulted in great bodily harm to the victim. But that statute provides only that certain prisoners have to serve 85 percent of their sentences. The statute doesn't apply here. As the court knows, a defendant is serving 50 percent of the sentence. Also, the defendant's crime was committed in 1995 prior to the application of that of that statute. The statute on this form reflects good time credits to be awarded after sentencing, not aggravating factors that the court considered in imposing it. So the mark couldn't have been intended to reflect that the court relied on that factor in fashioning the sentence. Anyhow, I have to note that a finding of great bodily harm is actually perfectly consistent with the court permissibly considering the nature, severity and extent of the victim's injuries as a basis for its finding of the aggravating factor. Again, it's the defendant's burden to show that the court considered the fact of the death and not the severity of the injuries in finding that factor. And the form doesn't show that. Moving on to the defendant's issue two. On the issue of general deterrence, the statute on aggravating factors doesn't limit that factor to the application to adult offenders. Also, the appellate court just last year in the Smith case ruled that it's not air as a matter of law for a court to find that factor in a case involving a juvenile offender or for the court to assign weight to that factor. And in that Smith case, the appellate court distinguished cases called Haney and McKinley, upon which the defendant in this case relies in making that ruling. Now, the defendant on appeal suggests that or argues that deterrence shouldn't apply where the underlying conduct cannot be deterred as where the conduct is unintentional or the defendant is a juvenile. In this case, of course, the conduct was very intentional. And again, under the Smith case, as well as the prior appellate court cases of Fox and Stafford cited in the People's Brief, that it's appropriate to find this factor even where the defendant is a juvenile offender. The defendant in the reply cites a case called Hill, but in that case, that case is highly distinguishable because here, unlike the Hill case, no expert testified that the defendant had uniquely underdeveloped thinking skills as an expert did in the Hill case. Also, the defendant had not shown rehabilitation as an adult. He didn't commit the crime due to negative peer influences or youthful impetuousness, and all of these were factors in play in the Hill case. Also, I have to note that the defendant in the Hill case had been subjected to physical abuse, sexual abuse and repeated other traumas and grew up in a crime-ridden housing project. Whereas the defendant in this case grew up in an intact and non-abuse home, was making passing grades in high school and had a supportive extended family, including his grandmother, who took him into her home before he killed her. The defendant, in addition to these arguments, claims that the court abused its discretion in evaluating factors of the defendant's age and rehabilitative prospects. Regarding age, the court was in the best position, of course, to consider those factors and the court did not substantively ignore it as the defendant claims. That's an argument based on the length of the sentence, but of course that doesn't overcome the strong presumption that the court duly considered the defendant's age and other factors related to his age. Although the court noted that the defendant had killed his grandmother two weeks before his 18th birthday, that didn't indicate that the court wasn't considering and give due consideration to the fact of his age. That was an accurate statement of fact. The facts in this case are strikingly similar to those in the Meriwether case, in which the court at resentencing noted that the defendant had committed murder just 10 days prior to his 18th birthday. The appellate court rejected the defendant's claim in that case as well, that the trial court should have given more weight to his age. The record would have supported the court's evaluation of the defendant's age, given the evidence of his clear-headed acts in the minutes and hours after this brutal murder. The record also supports the court's evaluation of the defendant's rehabilitative prospects, based on the evidence of his history and character and the nature and circumstances of the offense. For these reasons and the reasons stated in the People's Answer Brief, we respectfully request that the court affirm. Thank you, counsel. Any questions, Justice Williams? No questions. Justice Barberis? No, thank you. Rebuttal? Yes, Your Honors. I just have two points. Regarding the written judgment that the court marked up three times in three separate forms of finding that the conduct resulted in great bodily harm, as the state says, it didn't apply to Jason in this case, but the court still marked it all three times. So that cannot mean, or that cannot just mean that the court was finding this factor an insignificant factor, finding that this factor was insignificant. The fact that it marked it three times means the court was finding it three times, and that is a factor inherent in the offense of first-degree murder, especially if the statute doesn't apply. We give the trial court's deference, and we presume that the trial court knows the law, knows which statutes apply. Here, by marking it three times, the court specifically was finding something that did not apply to Jason in Jason's case. Thus, we ask for the first argument that this court reduce her remand for a new sentencing hearing, and for the second argument, again, going to deterrence, deterrence, general or specific, in this case, does not apply. The reason that the Hill decision applies in this case is the Hill court correctly found that it was hard to see how a lengthy sentence would deter similarly situated minors, like Hill or Jason, or adults capable of higher-order cost-benefit analysis of their decisions. The fact that the court here stated that it was finding deterrence, deterrence of others, a factor in aggravation, it just doesn't apply for youth or adults because adults have that higher functioning, higher ability to think of the consequences, to analyze their decision before making it, while minors do not. That's why the United States Supreme Court has found that deterrence doesn't apply equally to minors and adults. Especially, we're talking about, in some of the examples that Jason makes in the reply, is these unintentional conduct cases where you cannot deter something where it happens by accident or unintentionally. Here, the same applies because Jason, as a minor, he made a split-second decision. Again, the state talks about how the events unfolded after the initial decision was made to kill his grandmother, but that split decision was formed by his grandmother making him do chores all day, not letting him borrow her car, and him realizing that he might not be able to go see his girlfriend. I believe there was a mention of his grandmother did not stop talking while he was doing his chores. In that sense, because of this minor issue of his grandmother not stopping talking continuously, not letting him borrow his car, that led to him making this decision to kill her. But that shows his youth and his immaturity. The fact that he cannot consider the consequences where this one event led to, I guess, all the other events that followed. But that split-second decision, that is something that the courts recognize that juveniles are unable to make those calculated decisions, show self-restraint, act mature. That's clearly shown by the reasons that he gave for killing her. In this case, we ask this court to find that deterrence just does not apply in Jason's case or other juvenile cases, whether it's specific or general, whether it applies to others as an adult or others similarly situated. Unless this court has any other questions, we ask this court to remand or re-sentence or reduce the sentence. Thank you. Any questions for Justice Welch? No questions. Justice Barberas? No, thank you. The court will take the matter under advisement and issue its decision in due course. I appreciate counsel and your briefs and arguments. Thank you.